## MOSS v. McCALL.

1. A deed by husband and wife, reciting that the wife is about to become heiress of certain property, and conveying the property to a trustee for the mutual support of the husband and wife, and directing, that the profits, uses, and issues, should be paid to the husband and wife, " for their joint maintenance, during their natural lives, or to the survivor of them during the term of his, or her natural life," does not exclude the marital rights of the husband, or create a separate estate in the wife—that the entire equitable interest vests in the husband, and his possession completes the legal estate, for the life of himself, or wife, and may be sold under a *fieri facias* against him.

Writ of Error to the Circuit Court of Lowndes.

A WRIT of *fieri facias*, issued from the circuit court against the goods and chattels, &c. of C. B. Easley, which was levied on a male slave named George, about two years of age. Thereupon, the defendant in error interposed a claim, and entered into bond with surety, conditioned to try the right of property pursuant to the statute. The cause was tried by a jury, who returned a verdict for the claimant, and judgment

was rendered thereon. On the trial, the plaintiff proved that the defendant in execution had been in possession of the slave in question about four years previous to the levy. To repel the inference of a title in the defendant, the claimant proved that George was the slave mentioned in the deed of trust hereafter referred to, that he was placed in his possession by the administrator of Julia Mather, deceased, and by him retained for some time ; that he was a part of Mrs. Easley's share of the intestate's estate, and that the administrator took her receipt for such share, although he placed the same in the hands of the claimant.

Claimant also offered a deed dated the 25th July, 1842, executed by himself, the defendant in execution, and the wife of the latter. This deed recites that Mrs. Easley "is about to become possessed of certain negro slaves and other property, as heiress of Julia Mather, deceased," and that it is the desire of herself and husband, that that property should not become subject to the present or future debts, contracts and liabilities of the latter, "but that it should be so secured and vested in trustees, that the proceeds thereof might be received for their mutual support." The deed then in consideration of the premises, states that the defendant in execution and his wife "have granted, bargained, sold and released, and by these presents do grant, bargain, sell, release and assign, to the said James McCall forever, all the right, title, claim or demand, legal or equitable, of them, or either of them, may have in and to all and singular, the estate real and personal, now owned, or which may hereafter fall to the portion of the said Mary Ann Easley, as heiress," &c. To have and to hold the same to them and their heirs, during the life-time of the defendant and wife, and the survivor of them, upon the following uses and trusts, viz : "To pay over the profits, uses and issues of the same to the said Christopher B. Easley and Mary Ann Easley, for their joint maintenance during their natural lives, or to the survivor of them during the time of his or her natural life, not subject to the future or present debts or contracts of the said Christopher B. Easley; and at the death of both Christopher B. Easley and Mary Ann his wife, said property to be distributed in equal parts and proportions, to and between the children of the said

Christopher and Mary Ann; and in them to be vested in *fee simple.*"

Upon this evidence, the circuit court charged the jury, that the defendant had not such an interest in the slave in controversy, as could be levied on and sold under execution; and thereupon the plaintiff excepted.

J. E. BELSER and N. HARRIS, for the plaintiff in error, insisted that the wife of the defendant in execution has no separate estate, but merely a joint estate with her husband for life, which, when taken in connection with his possession, invests him with an interest which is liable to his debts at law; and this, although the deed of trust declares that the property shall not be thus chargeable. Such a provision is inoperative. [8 Ala. Rep. 151, *et seq.;* 4 Dev. Rep. 289; 3 Ves. Rep. 166; 5 Id. 520; 3 Brown's Ch. Rep. 381, 382; 5 Mad. Rep. 491; 2 Porter's Rep. 463; 2 Ala. Rep. 314; 7 Id. 32, 592; 8 Id. 345.]

N. COOK, for the defendant in error, contended that the husband's possession did not change his interest in the property embraced by the deed—that it was permissive, and might have been reclaimed by the trustee at pleasure. The intention of the deed was for the joint maintenance of husband and wife during their lives, and invests the wife with an interest in all the property, which would be defeated if it could be seized and sold to pay the husband's debts. [19 Wend. Rep. 175; 1 Roper on H. & W. 41, 59, 98, 164; 6 Munf. Rep. 245; 1 Spears' Eq. Rep. 579, 593; 2 Kent's Com. 165; 6 Har. & Johns. Rep. 460; Fonb. Eq. 100, note O.] The present case is distinguishable from Nelson, Carleton & Co. v. Banks, 7 Ala. Rep. 32, and The Bank v. Wilkins, Id. 589. There, neither of the trustees or the wives held rights in, or powers over the property, independent of the control and enjoyment of the husband.

COLLIER, C. J.—The cases of Cook v. Kennerly, and Bender v. Reynolds, at this term, are decisive of the present, unless the intention that the profits of the property embraced by the deed should be paid over to the defendant in execu-

tion and his wife, "for their mutual support," and "joint maintenance," distinguish them. In Fellows, Wadsworth & Co. v. Tann, by her next friend, et al. 9 Ala. Rep. 999, a father gave to his widowed daughter, "and the heirs of her body, by deed, a female .slave, who he provided should be under her control and employment, in the most profitable way for the use and support of herself and "her heirs," during their joint lives; after her death it was directed that the property should be divided "among her heirs." Shortly after the gift, the daughter took possession of the slave, who, together with her increase, have for more than twenty years been treated as the separate property of the daughter and her children; though the daughter married soon after acquiring the possession: *Held*, that the deed invested the daughter and her children *collectively* with interests which the creditors of the husband could not divest through the medium of any *forum*, and as it respected the daughter (his wife), not by sale under execution. But, if the husband acquired an interest in virtue of his marital rights, his creditor must proceed in equity to subject it to his judgment.

In Spear v. Walkley, 10 Ala. Rep. 328, the testatrix bequeathed to the husband certain slaves, to be held and worked by him, for the use of his wife and children, but subject in no way to his debts, &c.; and at his death to be equally divided among his children then living, and the issue of such as may be dead, taking together the part that would have fallen to their parent. It was determined that the title to the slaves was vested in the husband for a special purpose, and his control over them was to work them for his wife and children, and he had no estate, even as it respects the wife's interest, that could be sold under execution: that, if the profits of the slaves' labor constituted a fund to be divided between the wife and children, then the wife's share devolved on the husband, and could only be ascertained and separated in equity.

These cases are distinguishable from the one before us, in at least one important particular, viz., in making the children as well as the wife and mother, the present objects of the testator's or donor's bounty; and consequently, are not adverse to the plaintiff.

80

In O'Neil, Michaux & Thomas v. Teague and Teague, 8 Ala. Rep. 345, a father gave certain slaves by deed, in trust for the " benefit" of his married daughter, providing that the daughter and her husband should retain the possession of them, together with their increase during coverture, and the life of the daughter ; and if she should die without issue, the slaves were to revert to the donor or his lawful heirs. It was held that the slaves being in possession of the husband, were subject to seizure and sale under an execution against his estate, at least for the period of his life.

But it has been decided that a bequest of a bond and mortgage debt to a married woman, to be delivered up to her *whenever she should demand or require the same,* was a bequest *to her separate use.* The chancellor said, as these securities were to be given up *on her demand,* the husband could not obtain them from the executors *without a demand made by his wife,* which gave her a *dominion* over them, they must be considered as given to her *separate use.* [Dixon v. Olmius, 2 Coxe's Rep. 414.] So a legacy to a married woman *for her own use, and at her own disposal,* vests in her a separate estate. [Prichard v. Ames, 1 Turn. Ch. Rep. 222.] In Lee v. Prieaux, 3 Bro. Ch. Rep. 381, it was held that a legacy to a *feme covert,* with a direction as follows, viz : " her receipt to be a sufficient discharge to the executors," is equivalent with saying, *to her sole and separate use.* In this case the Master of the Rolls said, " the only question now is, whether the words in this will are sufficient to show, that the testator meant to give an absolute power to the wife, independent of the husband, to recover the money." He continues, " the testatrix might probably have inserted these words, ' her receipt should be a sufficient discharge,' in consideration of the petitioner being a married woman, and the party was in that situation, that she could not have been authorized so to do : if these words have not this meaning, she might as well have omitted them." It was therefore concluded, that the testatrix meant that the legatee " should have the power to give *a discharge,* so as to bar her husband." Darley v. Darley, 3 Atk. Rep. 399, in which Lord Hardwicke is made to say, that a bequest to the husband for the *livelihood* of his wife is sufficient to show the intention of the

giver that it should be *to her sole and separate use,* was cited by the Master of Rolls. The facts of this case are not stated by the reporter, and he furnishes them from the register, and adds, "such a case, had it been correctly stated in Atkins, might have deserved csnsideration, but as it stands, is of no authority." [See Adamson v. Armitage, Coop. Ch. Rep. 283; Ex parte Wray, 1 Mad. Rep. 199; Beresford v. Hobson, Id. 376, and note; Elton v. Shepherd, 1 Bro. Ch. Rep. 532; Hoig v. Swiney, 1 Sim. & Stu. Rep. 487; Steel v. Steel, 1 Ired. Eq. Rep. 452.]

It has been frequently said, that courts of equity will not deprive the husband of his wife's property to which he is by law entitled, unless the intention be clear that he was not to derive any benefit from it, and that it should be for the personal use and disposition of his wife. [1 Roper on H. & W. 18, *et seq.;* Williams v. Claiborne, 7 S. & Mar. Rep. 488; Hunt v. Booth, Freem. Ch. Rep. 215.] To create a separate estate in a married woman, where a conveyance is made to a trustee for her use, no technical language is necessary; but it should appear unequivocally on the face of the instrument, that the intention was to exclude the husband from any interference with the property conveyed. [Heathman v. Hall, 3 Ired. Eq. Rep. 414; Thompson, et al. v. McKissick, 3 Hump. Rep. 631.]

The case of Darley v. Darley, as reported by Atkins, perhaps goes farther than any other to support the wife's claim to a separate estate against the creditors of the husband. If a gift to a married woman, for her *livelihood,* invest her with an *exclusive interest,* we cannot see why a gift for her *support* or *maintenance,* should not have the same effect. But the correctness of the report of this case, we have seen is denied in Lee v. Prieaux, and the facts there stated by the Master of the Rolls, perhaps show a case which satisfactorily supports the opinion of the Lord Chancellor, and makes his judgment less questionable than the reporter has shown it to be.

But it is not necessary to consider whether the terms *support* or *maintenance* are either or both sufficiently potent in themselves to constitute a separate estate, where a conveyance is made to the trustee for the wife; for that is not the

case at bar. The deed declares that the intention is so to secure the property, that the proceeds may "be received for their (husband and wife's) mutual support," and directs that the profits, uses and issues of the same be paid to the husband and wife "for their joint maintenance during their natural lives, or to the survivor of them during the time of his or her natural life."

These words do not exclude the control or dominion of the husband, for he may demand and receive all the profits, and his receipt would be a discharge to the trustee; or if it be allowable to pay part of the income to the wife, then as soon as it was paid to her, it would vest in the husband *jure mariti*. This must be so; for there is nothing to indicate that the trust as to the profits, would give a moiety to the separate use of the wife, and exclude the dominion of the husband. The deed then invests the husband and wife with a joint estate to be employed in their *support* and *maintenance*, and as the trustee has no discretion in expending money for these objects, and the husband is charged with the duty of maintaining or supporting his wife, it would seem in the absence of an express or implied prohibition that the money should come under his control. This being the law applicable to the facts, the cases of *Cook v. Kennerly* and *Bender v. Reynolds*, determine that the entire *equitable interest* vests in the husband, and his possession completes the *legal estate* for the life of himself or wife; and for that length of time it may be sold under a *fieri facias* against him.

The cases cited by the counsel for the defendant in error, to show that under a joint conveyance of land to husband and wife, they are seized *per tout* and not *per mi*, that is, they are owners of the whole, and not of the half only, and that the interest of neither of them can be disposed of, without the consent of the other, have no application to the case at bar. The interest acquired by the husband in the real estate of his wife, is altogether different from that which he has in her personalty. But even in the case of a fee simple estate, he may sell on mortgage for his wife's life. *at least*, upon condition that he is the longest liver. [Motley v. Whitemore, 2 Dev. & Bat. R. 537; Jackson v. Stevens, 16 Johns.

R. 110; Jackson v. Carey, Ib. 302; Doe v. Howland, 8 Cow. R. 277; Doe v. Hardenburgh, 5 Hals. R. 42; Barber v. Harris, 19 Wend. R. 617.]

It follows from what has been said, that the ruling of the circuit court cannot be supported—its judgment is therefore reversed, and the cause remanded.