## PEAKE *vs.* YELDELL.

1. The construction and interpretation of a contract, as well as its validity, must be governed by the law of the place where the contract is made.

2. By an antenuptial settlement, executed in South Carolina, where the parties resided, the property of the intended wife was conveyed to a trustee, to be held by him for her sole and separate use, behoof, and benefit until the solemnization of the marriage, and immediately after, in

Peake v. Yeldell.

trust "for the joint and equal benefit and behoof" of the husband and wife, "for and during the term of their joint lives, without being subject in any manner to the debts, contracts and engagements" of the husband; and in trust to permit and suffer the husband and wife, "during their joint lives to receive and take the profits &c. to and for their joint and equal use, behoof, and benefit, and from and after the death of either of them, then to and for the sole and individual use of the survivor during his or her natural life," with remainder over, &c.—*Held*—1st, That by the law of South Carolina the wife took a joint interest in the trust with her husband. 2d, That, until the trust is executed by the union of the legal with the equitable title, the former continues in the trustee, and the husband's interest in the property cannot be seized and sold under execution at law.

Error to the Circuit Court of Dallas. Tried before the Hon. Nathan Cook.

Evans, with whom was Elmore, for the plaintiff:

I. The *lex loci* determines the nature and validity, obligation and legal effect of the contract, and furnishes the rule of construction and interpretation.—Story's Confl. of Laws, §§ 275-6; Carnegie v. Morrison, 2 Metc. 381-397; Bulger v. Porcher, 11 Pickering, 36; Blanchard v. Russel, 13 Mass. 1-4; Pitkin v. Thomason, 13 Pickering, 64; Shelford on Mar. & Divorce, L. Lib. vol. 33, p. 115; Trimly v. Vignier, 1 Bingham, 151—see, also, note (a) to Andrews v. Heriot, 4 Cow. Rep. 510, where numerous authorities are collected and compared— Watson v. Orr, 3 Dev. Rep. 161; Anstruther v. Adair, 2 Mylne & Keene, 513. In the last mentioned case, the Lord Chancellor, commenting on the effect of a marriage contract, executed in Scotland, upon the rights of the parties in England, said, "It was perfectly clear that the operation of the marriage contract, and the respective rights of the parties under it, must be determined by reference to the Scotch law; a different decision would totally defeat the intention of the contracting parties."

II. The parties to the deed were domiciled in the State of South Carolina, the contract was executed there, and in reference to the laws of that State. The construction of the contract and of the rights and interests of the parties, must be determined exclusively by reference to those laws. They constitute a part of the contract, as much as if those laws had been specially

refered to and incorporated in the writing. The important and decisive question then, is, what are the laws of South Carolina, applicable to deeds of this character, and what are the respective rights and disabilities of the parties under the contract? If this question were depending in the courts of the State of South Carolina, how would those courts expound the contract, and what would be their decision?

The adjudged cases from South Carolina, which are in evidence, and the depositions of Messrs. Memminger, Mazyck and Hayne, conclusively show—1st, The marital rights of the husband do not and cannot attach under the law of the deed, which is a part of the contract. 2d, The husband acquires no interest, except under the deed, and this interest is a mere *equity*, which can be ascertained only in a court of equity. 3d, By the law of the deed, the legal estate and the right of possession continues in the trustee, and the possession of the husband, or of the husband and wife, was permissive only, and subject to be determined at the will of the trustee. Such possession can never ripen into a *legal* right. 4th, The operation of the deed under the *lex loci* is to *exclude the marital rights of the husband*, and is as potential to effect that object, as if words of that import had been inserted. 5th, That the wife under the deed takes an equity equal to her husband's and the same in extent and character. This equity is absolutely independent of the husband, and by no act of his can she be deprived of it, either at law or in equity. 6th, That her equities, or interests, are at least equal to the husband's, and that she is capable under the *lex loci* of holding with him, in the same manner as any other person might do; and that her interest does not merge in the husband's. Her interest is of the same nature, character and extent of the husband's, and she cannot be deprived of this interest in any *forum* or by any form of procedure whatever, without an invasion of her rights, as guarantied to her by the contract, when construed according to the *lex loci*. 7th, Under the deed and by operation of the *lex loci*, the husband can claim no advantage from his possession.—See depositions of Messrs. Memminger, Mazyck and Hayne—also, Rice v. Burnett, 1 Speer's Eq. Rep. 579; Iorr v. Hodges, 1 ib. 593; Jones & Wife v. Fort, Townsend et al. 1 Richardson's Eq. Rep. 50.

III. In addition, another proposition, fully established by the

testimony, is equally fatal to the claim of the plaintiff in execution to subject the property at law. The wife has an interest with her husband in the trust, she holds with him, and has the capacity under the *lex loci* so to hold. Her interest does not merge in the husband's, and so in principle it stands as if children, or any third person, and not the wife, had the interest. The principle then, here presented, is the same as in Fellows & Wadsworth v. Tann, 9 Ala. 999; Spear v. Walkly, 10 ib. 328; Terrell et al. v. Green, 11 ib. 207; Lavender et al. v. Lee, 14 ib.

IV. That this is not a mere question as to the remedy, is evident from the direct and positive testimony of the very intelligent gentlemen who have been examined in the cause, who all concur in testifying that the wife's claims are substantial, not formal, and that the property cannot be taken under execution, without a violation of the contract. It is of the essence of the contract, and to allow a seizure and sale under execution, would defeat the trust—would most injuriously affect her interest, and virtually deny to her the benefits and rights reserved to her under the deed. But what is to my mind conclusive, upon this branch of the case, is the fact, that by the laws of the State of South Carolina, the wife's interest cannot be subjected in any *forum* whatever, nor by any form of proceedure—nor can any part of the *corpus* of the estate be taken in equity or elsewhere, even for the husband's debts—nor can his interest in the proceeds be severed from hers, so as to destroy or change the trust, or reduce her portion, or render it less valuable,—nor without the compensation to her for waste, &c.

LAPSLEY & HUNTER, for the defendant:

1. Has the husband any interest in the property, subject to his debts? This is a question of right, and in solving it, we will inquire to what extent the laws of South Carolina affect this question, and what those laws are, or *were at the time the deed was made.*

2. If the husband has any interest subject to his debts, how may this interest be subjected? This question pertains to the forum.

As to the first question—the right: It is conceded by the claimant, that one half of the property belongs to the husband, under the deed, but it is contended that no part is liable to exc-

cution under the laws of South Carolina, which he contends must control not only the right, but the remedy. But if the law of South Carolina is to govern, it must be the law, as it existed *at the time the deed was created,* and not as subsequently modified, or changed. By agreement all the South Carolina decisions relating to these questions are in evidence. As there is no statutory law bearing on the question, we must look to the common law, as laid down and expounded by the courts of the last resort.

The claimant relies on the depositions of several highly respectable lawyers of South Carolina, whose opinions are based on the cases of Rice v. Burnett, 1 Speer's Eq. Rep. 581; Iorr v. Hodges, 1 ib. 593; Jones & Wife v. Fort, Townsend et al. 1 Rich. Eq. Rep. 50. These cases were all decided in the year 1844, and are most manifest departures from the previous decisions.— See dissenting opinion of Judge O'Neal, in cases of Rice v. Burnett and Iorr v. Hodges, 1 Speer's Eq. Rep., in which he protests against the innovations on the law, as previously settled, and against sending "*an execution creditor into chancery to get his money out of unfettered trust estates.*"—See, also, Pringle v. Allen, 1 Hill's Ch. R. 137, (decided in 1833); Cleary v. McDowell, Cheves' Eq. Rep. 140, (in 1840); Pyon v. Mood, 2 McMullen, 281-296, (in 1841); Barrett v. Barrett, 4 Dess. 447. From these cases, it seems clear that even in South Carolina, as the law was settled at the time the deed was executed, and for several years afterwards, the husband's marital rights attached, not on one half only, but on the whole property. The law being subsequently changed or modified, the question could in no manner be affected by such change, or modification.

2. But as to the remedy or forum : Is the law of South Carolina, or that of Alabama, to govern ? The law of Alabama certainly. No independent State could with justice to itself or its own citizens, permit its prescribed remedies and forms of judicial proceeding to be displaced by those of any other power. Story's Confl. of Laws, p. 468-9, §§ 557-8, n. 1, p. 470-467, § 556; Cook v. Kennerly & Smith, 12 Ala. 51. The inquiry, however, is not whether this property was subject to levy in South Carolina, some ten or twelve years ago, but was it subject here at the time these levies were made ?

As to what constitutes possession and the consequences re-

sulting therefrom, the laws of Alabama, and not of South Carolina, must govern. An independent State could not permit its control and jurisdiction, in questions of this sort, to be invaded, any more than it could suffer another power, to prescribe its forms of judicial proceeding. To suffer this, would not only be to surrender an important part of its sovereignty, but would create invidious distinctions and confer immunities on persons coming from another jurisdiction, which the mass of its own citizens do not possess. Restrictions and limitations of this kind are against the declared policy of our laws, and will not be favorably considered.—Lenoir v. Rainey, 15 Ala. 670.

It is settled in this State, beyond controversy, that a debtor's interest in personal property in possession, whatever it be, is subject to sale under execution; and that the interposition of a trustee will not vary the rule. The only exception to this rule is where property is conveyed in trust for the benefit of *persons other than the wife*, in connection with the husband. This exception, and the reasons for it, are clearly pointed out in the cases of Fellows v. Tann, 9 Ala. 999; Spears v. Walkley, 10 ib. 328; Lavender v. Lee, 14 ib. 688; Rugely v. Robinson, 10 ib. 702, and recognised in Cook v. Kennerly, 12 ib. 42. For the law of this case, we may look to the following cases, among others—Lamb v. Wragg, 8 Porter, 72; Dunn v. Bank of Mobile, 2 Ala. 152; Price v. Price, 5 ib. 578; Carlton v. Banks, 7 ib. 32; Branch B'k at Mont'gy v. Wilkins, 7 ib. 589; Gamble v. Gamble, 11 ib. 966; Cook v. Kennerly & Smith, 12 ib. 42; Bender v. Reynolds, 12 ib. 446; Welsh v. Welsh, 14 ib. 76; Scott v. Abercrombie, 14 ib. 270; Pollard v. Merrell, 15 ib. 169; Machen v. Machen, 15 ib. 373; Lenoir v. Rainey, 15 ib. 667, Allen & Wife v. White, 16 ib. 181.

DARGAN, C. J.—This was a trial of the right of property in certain slaves, levied on as the property of William B. Townsend, and claimed by William E. Peake. To show title to the slaves, the complainant introduced a deed, bearing date the 26th of March 1835, executed by William B. Townsend, Martha S. Jenkins, and Benjamin Reynolds, which, after reciting that a marriage was intended shortly to be solemnized between the said William B. Townsend and Martha S. Jenkins, conveyed to the said Benjamin Reynolds, as trustee, certain slaves, to-

gether with some bonds and obligations for the payment of money, which at the time of the execution of the deed were the property of Martha S. Jenkins, the intended wife. The conveyance, however, was subject to the trust and limitations expressed in the deed, which are as follows: "In trust for the sole and exclusive use, behoof, and benefit of the said Martha S. Jenkins, until the solemnization of the said marriage, and immediately after the solemnization thereof, in trust to and for the joint and equal use, benefit, and behoof of the said Martha S. Jenkins and William B. Townsend, for and during the term of their joint lives, without being subject in any manner to the debts, contracts, and engagements of the said William B. Townsend, and in trust to permit and suffer them, the said Martha S. Jenkins and William B. Townsend, during their joint lives, to recieve and take the issues, profits, and labor of said slaves, and the interest of the said bonds and obligations to and for their joint and equal use, behoof, and benefit, and from and after the death of either of them, the said Martha S. Jenkins and William B. Townsend, then to and for the sole and individual use of the survivor of them, for and during the term of his or her natural life." The deed also provides for the children of the marriage, after the death of the survivor, and contains several limitations over in default of children. It is also provided, that the trustee might sell the slaves, or exchange them for other property, and in the event the money on the bonds should be collected, that the trustee, at the request of the said Martha S. Jenkins and William B. Townsend, should invest the same, and also such sums of money as he might receive from the sale of the slaves conveyed by the deed, in other property, real or personal, to be held on the same terms and subject to the same trusts and limitations. It is further provided that in the event of the resignation of the trustee, that Martha S. Jenkins and William B. Townsend might, by writing under their hands and seals, appoint another, who should succeed to all the rights conveyed by the deed to Benjamin Reynolds. It was also shown that the slaves levied on were purchased with the proceeds of the bonds conveyed by the deed, and that the claimant had been duly appointed trustee, after the resignation of Reynolds in the manner described in the deed. At the time of the execution of this deed the parties resided in South Carolina, and were there

married. After the marriage Townsend and his wife removed to this State, and the slaves have been in his possession, but the testimony tended to show, that he always acknowledged that he held them in conformity with the terms of the deed, and not in opposition to it.

If this deed is to be construed by the laws of Alabama, there could not be a doubt but that Townsend, the husband, would take the entire interest in the slaves, during the life of himself and wife and the survivor of them, for it is the settled law in this State that the husband and wife cannot be joint tenants or tenants in common of a chattel, either in law or in equity. In the case of Moss v. McCall, 12 Ala. 630, it was decided, that where property is conveyed to a trustee for the mutual support of husband and wife, and the profits are directed to be paid to the husband and wife for their joint maintenance, the entire interest is vested in the husband, and that the wife takes no interest in the trust. Again, in the case of Cook v. Kennerly, 12 Ala. 49, slaves were conveyed to a trusree for the joint use of husband and wife, during life, and after their death, remainder over to the children of the marriage; it was decided, that the husband took the entire life estate, to the exclusion of the wife. Indeed this very deed was before this court, in the case of Bender v. Reynolds, 12 Ala. 446, and it was held not to create a separate estate in the wife, but that the slaves, having come into the possession of the husband, were liable to be sold for his debts under execution at law. But it did not appear in that case that the laws of South Carolina, where the deed was executed, differed from the laws of Alabama. In the case of Pollard v. Merrill et al. 15 Ala. the deed, which was an antenuptial agreement, conveyed the property of the intended wife to trustees, to have and to hold the same for the separate and exclusive use of the wife and the intended husband, during their joint lives, with remainder over to the children of the marriage, and it was expressly declared by the deed, that the property should in no wise be liable to the debts of the husband. After the marriage the property, which consisted of slaves, came into the possession of the husband, and it was decided that they could be sold under execution at law against the husband. All these decisions rest upon the principle, that there cannot be a community of interest between husband and wife in goods, either at law or in equity,

and to prevent the right of the husband from attaching to the whole, if the property came into his possession, he must be altogether excluded from all interest in the property, at least during the interest of the wife; and to secure her rights, the property must be conveyed for her sole and separate use. Whether these decisions be in conformity with the rules of the common law or not, as understood in England, they settle the law in this State, and the deed now under consideration construed by them would give to the husband the entire property, during the life of himself and his wife, or the survivor of them, which could be sold under execution, as the husband had the slaves in possession.

But the deed was executed in South Carolina, and in reference to the rights that the husband and wife take under it, we must look to the laws of that State, and by them the deed must be construed; for it is a principle, acknowledged by all courts, that the *lex loci contractus* must govern, not only as to the validity of the contract, but also in its construction and interpretation, by which the rights of the parties are ascertained.—Story's Conf. Laws, §§ 275-6; Carnegee v. Morrison, 2 Metc. 381. Judge Story, in speaking of marriage contracts, says, the language of marriage contracts and settlements must be interpreted according to the law of the place where they are contracted.—Story's Conf. Laws, § 576. Indeed a different rule would not only lead to infinite difficulty and perplexity, but what is still worse, it would lead to a destruction of the legal rights of the parties to the contract, and instead of ascertaining and enforcing their rights, which is the duty of courts, we would destroy them. We must therefore inquire what are the laws of South Carolina in reference to this deed, and what rights, if any, did Mrs. Townsend take under it. The claimant introduced the depositions of three practicing lawyers of South Carolina, all of whom swear that by the laws of South Carolina the interest of the husband in the slaves could not be sold at law, and that he takes a joint and equal interest with his wife in the trust created by the deed, and they refer to the cases decided by the courts of last resort in that State as the foundation of their opinion. In the case of Rice v. Burnett, 1 Speers' Eq. 579, the deed of marriage settlement conveyed the real and personal estate of the intended wife to a trustee for her sole use, until the marriage should take

place, and afterwards in trust to permit the wife and husband to have, use and possess the property, during their joint lives, and after the death of either, then to permit the survivor to use, possess and enjoy the property, during his or her life, with remainder over to the children of the marriage. On this deed, the question arose, whether the slaves conveyed by it were liable to be sold at law, they having come to the possession of the husband, for whose debts they were seized by execution. The court decided that they could not, and that the creditor would have to resort to a court of equity to subject the interest of the husband. In the case of Iorr et als. v. Hodges et als., ib. 593, certain slaves were conveyed by an antenuptial agreement to a trustee in trust to permit the husband, during the joint lives of himself and his intended wife, to have, receive, take and enjoy all the interest, income, and profits of the slaves, to and for their use and benefit; it was held that the slaves were not liable to sale at law under execution against the husband. It is true, that those decisions do not expressly declare that the wife takes a joint interest in the trust with her husband, but if the wife took no interest in equity under the marriage settlement, we are unable to perceive why the slaves could not be sold at law, even under the decisions of the courts of South Carolina; for in the case of Pringle v. Allen, 1 Hill's Ch. 135, the question arose under a marriage settlement, by which slaves were conveyed to trustees in trust for the husband and wife, during their joint lives, and for the use of the survivor, during life, with remainder over to the issue of the marriage; the husband died, leaving issue, the wife surviving him; the slaves were seized after the death of the husband, to satisfy the debts of the wife, and the question was whether they were liable to be sold; the court held that, as the wife was in possession, she had a legal estate during her life, which was liable to sale at law. The case of Porcher v. Gist, cited in the opinion, maintains the same doctrine, and the principle seems to be settled in that State, that if personal estate is conveyed to a trustee in trust for one for life, with remainder over after his death, if the tenant for life come into the actual possession of the property he is considered as owner at law, and his life estate may be sold.—Forgarty v. Hubbell, 3 Hill 30; Ford v. Caldwell, ib. 248. Unless, therefore, these decisions are all overturned by the cases cited from 1 Speers' Eq. Rep.,

we must hold that the wife would have an interest in the slaves under this deed, for if she had not, and the husband had the entire life estate, after he received the possession of the slaves, they would be liable to be sold under execution, that is, his title would be a legal one, and his interest liable to be sold at law. But if the husband was not entitled to the entire equity, but the wife was jointly entitled with him, then the legal title would not pass from the trustee, for the wife, being incapable of holding a legal title to personalty during coverture, the title must remain in the trustee to protect her equity, and consequently the trust would not be executed, even as to the life estate of husband and wife, and not being executed, the legal title could not vest in the husband by his possession under the deed. This view seems to correspond with the opinion that the witnesses entertain of the cases reported in 1 Speers' Eq. Reports, and we have not been able to find any case decided in South Carolina that denies that husband and wife may take a joint interest in a trust created by an antenuptial contract; but on the contrary, in the case of Jones & Wife v. Fort, Townsend & Mendenhall, 1 Rich. Eq. Reports, it was expressly decided that when personal property is conveyed to a trustee for the use of husband and wife, it cannot be sold at law by the creditors of the husband, although the husband, as the trustee, was in possession, but that the husband's interest could be subject only in a court of equity. In this case, it was refered to the master to inquire and report what portion of the property ought to be settled to the sole use of the wife, thus clearly showing that the court considered the wife as taking a joint interest with the husband in the trust. This was the evidence introduced in the court below, to show that according to the *lex loci contractus*, the wife took a joint interest in the trust with the husband. The testimony of the witnesses distinctly declares such to be the law, and the decisions of the courts of the last resort corroborate their opinion. We think the evidence was sufficient to show that, under the laws of South Carolina, the wife has an interest in the property, held under the deed, and that the court to whom this question of fact was submitted by consent should have so determined.

Having attained the conclusion that the wife has an equitable interest in the property, it becomes necessary to ascertain in whom the legal title remains. This, however, is an easy task.

The title of the trustee continues so long as it is necessary to support the equitable title of the *cestui que trust;* it continues until the legal title can be united with the equitable and the trust is performed or executed. But the legal title cannot vest in the wife during coverture, for she can own no personal property at law; it would pass directly to her husband. Unless, therefore, we would altogether defeat her interest under the deed, we must hold that the legal title to the slaves is still in the trustee for the purposes of the trust, which are not as yet executed, and the legal title being in him, the slaves cannot be sold under executions at law against the husband, but the creditors must resort to a court of equity to separate his equitable interest from that of his wife, and subject it to the payment of their debts.

The view we have taken shows that the court erred in its instructions to the jury, and the judgment must. therefore be reversed and the cause remanded.