## PETTY *et als. vs.* BOOTHE *et als.*

1. An ante-nuptial contract was entered into between B. and M., in the following language: "Whereas a marriage is about to be solemnized between B. and M., and the said M. is likely to bring into the marriage property of some value, and it being desirable that provision should be made for her maintenance and support, it is therefore agreed and stipulated, that the real estate and negroes which were devised to the said M. by her father, and all other property which she may otherwise hereafter inherit, shall be held and remain the separate and distinct property of the said M., not subject to any other disposition save by the joint consent of herself and one of the trustees hereinafter named. The said property, however, to be and remain in the possession of the said B., for the benefit of the parties. It is further stipulated, that said property shall descend and be inherited by the children of the said M., if she has any; but if none, or in case of their death before marriage or arriving at the age of twenty-one years, then said property to go to said B." Trustees are also appointed "for the said M. to protect her interest and to attend to the due execution" of the instrument; and by another provision, one of the trustees "shall have full power to sell and dispose of the real estate of said M. whenever he may see proper to do so, and appropriate the funds in such way as he may think best for her interest." *It was held,*

1. That the contract gives to the wife such a separate estate in the slaves conveyed by it, as entitles her exclusively to their labor and profits; and which cannot be defeated by her husband, or subjected to the payment of his debts.

41

Petty et als. v. Boothe et als.

2. The possession of the husband "*for the benefit of the parties*," must be construed to mean for the use of the wife during her life, and at her death, for those who might be entitled to the remainder according to the provisions of the deed.

2. In the construction of deeds, if there are two clauses which are inconsistent and irreconcilable with each other, the last must give way to the first.

3. When subsequent words in a deed are of doubtful import, they will not be so construed as to contradict preceding words which are certain.

Error to the Chancery Court of Barbour. Tried before the Hon. J. W. Lesesne.

Sayre, for plaintiffs in error:

1. Under the marriage settlement, Boothe, the husband, retained an interest for life in the property, therein mentioned. The deed recites that the property is to be and remain in possession of Boothe, for the benefit of the parties.—15 Ala. 169. The property was to be held by Boothe, for the "benefit of the parties;" that is, for the benefit of the parties to the deed. In law, the husband and wife are one person, and when property is vested in husband and wife, it is held by the husband in his own right.—15 Ala. 176; 17 ib. 644. The deed does not specify in what that benefit should consist; it is therefore a general use, and can be subjected to the payment of debts.—10 Ala. 743. The deed specifies that the property should be the separate and distinct property of Mrs. Boothe; that is, that the legal title should be in her, or vested in trustees for her, but it nowhere reserves for her a separate and distinct interest in the proceeds of the property. This brings it within the principle of the case, (Pollard et al. v. Merrill et al., 15 Ala. 169,) where the property was to be secured for the use and exclusive benefit of the intended wife; but the profits were to be held for the joint maintenance and support of the husband and wife. Such also was the intention in the case of Moss v. McCall, 12 Ala. 630. The object in all these cases was, to prevent the legal title from vesting in the husband; to vest in husband and wife the proceeds of the property; to place both the property and the proceeds thereof beyond the reach of creditors. Such being the case, the property was subjected to the payment of debts. The beneficial interest in property, or its produce, whether the legal estate be

Petty et als. v. Boothe et als.

vested in a trustee or not, may be charged with the payment of the debts of the proprietor. No one can have a legal or equitable right to property, which is not subject to the payment of his debts, either at law or by a proceeding in equity. Whenever a debtor can claim a general use, benefit or interest in the property, it may be reached by his creditors.—Rugely & Harrison v. Robinson, 10 Ala. 740. In the case at bar, there seems to have been no attempt to exclude creditors; the sole object seems to have been to exclude Boothe's children by a former marriage. The intention to exclude the husband must appear unequivocally on the face of the instrument.—12 Ala. 47; 15 Ala. 173-4; 12 ib. 635. The court cannot look to the context to discover the intention of the parties.—Bell on Hus. & Wife, 304. A deed must, if possible, be so construed that all of its parts may stand. There are but four stipulations in this deed, and no one of them is inconsistent with another. The intention seems to have been, that Boothe should have had some benefit from the property after the marriage. To exclude him from all benefit, would not only violate the express terms of the deed, but also the intention appearing on its face. There is no evidence that Boothe would have consented to the execution of any deed, by which he would have been excluded from all benefit of the property. If the intention was to allow Boothe some benefit, and also to exclude creditors from subjecting that "benefit," it was an intention which this court will not countenance; for it is attempting to do that which the law will not tolerate.—12 Ala. 47.

2. In order to give the court jurisdiction to reform a deed, the ground upon which the reformation is sought must be established by clear and satisfactory proof.—1 Story's Com. on Eq. 164, § 152; 11 Ala. 190; 1 ib. 171. The mistake must be mutual, if there is no fraud.—1 Story's Eq. 167, § 155. This court has already decided, that the decree of the chancellor in this particular case operated only as a deed of settlement by the husband on the wife, and cannot affect a judgment creditor, except it be sustained by extrinsic proof.—12 Ala. 123. So that it was the duty of the defendants in error to establish all the facts upon which the decree of the chancellor was based.

The bill filed to reform the marriage contract alleges, that it was agreed between the parties, that after the marriage the property was to remain in the possession of Boothe, for the sole and

separate use and benefit of Mrs. Boothe; that Boothe repre-
sented that the contract, afterwards drawn up, contained said
contract; that Mrs. Boothe executed said contract under the
belief that such was the fact; that before the execution of said
contract, Boothe read over to his intended wife the contract, but
misread it, in this, that instead of reading the words, "after
said marriage, for the benefit of the parties," as written in the
deed, he read, "after said marriage, for the benefit of said Mar-
tha;" and that he then read the instrument actually drawn up,
as securing to Mrs. Boothe not only the legal title, but also the
profits thereof.    All these things constitute the consideration of
that decree, and must be proved in order to give that decree any
effect against creditors.  The consideration stated must be proven,
and not a different one.—16 Ala. 94.   But not one of the above
facts is established by the proof in this case.

Creditors may join in filing a bill.—10 Ala. 432.

The excuse of ignorance is not favored by courts of equity;
and the mistake must be clearly and satisfactorily established.
Boothe and wife rested perfectly contented under the deed, for
years, and it is not until judgments are obtained that the mis-
take was discovered.—Stone v. Hale, 17 Ala 561.

Fraud or mistake are the only grounds upon which a court of
chancery has jurisdiction to reform written contracts.–1 Ala. 165.

The facts which constitute the fraud or mistake, must be al-
leged in the bill and proven on the trial.—6 Har. & Johns. 28.

A court of equity will not interfere to alter or reform written
contracts, unless the proof be clear beyond a doubt, because it is
better that a doubtful written instrument should stand, than that
a doubtful provision should be substituted by parol testimony.—
2 How. Miss. 718.

Buford, *contra:*

I. Upon the theory that the legal effect of the deed gives the
husband an interest—

1. The witnesses, Mrs. Harrison and Mrs. Pease, show the
intention of the parties was different, and it would be a fraud in
Boothe or his creditors to give the marriage contract a different
effect; and in case of such a fraud attempted, in reference to a
deed intended for a mortgage, equity would interpose—(see au-
thorities cited by defendant, in Bryan & McPhail v. Cowart, at
this term)—and marriage settlements being of greater public

concernment and more liable to misapprehensions, are, at least, equally entitled to be classed as exceptions to the general rule against parol evidence.

2. Boothe's interest (if any he had) was not separable from his wife and children's, and so not liable to his debts.—Rugely v. Robinson, 10 Ala. 702; and see opinion of C. J. Collier in that case; Lavender v. Lee, 14 ib. 692-3-4. Especially as trustees' assent was necessary to charging the property.—Rugely v. Robinson, 10 Ala. 722-3, *supra.* "The benefit of the parties," as per deed, required the property "to remain in Boothe's possession;" and so it was not liable, even by dissenting opinion of C. J. Dargan, in 14 Ala., *supra.*

3. The deed was reformed, and the evidence vindicates that reformation, and shows mistake of fact.

1. Mrs. Harrison, says, Mrs. Boothe, on account of B.'s gaming propensity, would not marry without "a marriage contract." Witness suggested to B. the difficulty, a day or two before the marriage, and in a few minutes the contract was drawn and signed. Didn't hear it read, but Boothe called it "a marriage contract."

2. Mr. Pease. Before the marriage, Boothe said the contract settled the property on Mrs. B.; Boothe was in debt and reputed insolvent; Mrs. B. postponed the marriage once or twice in consequence; she was often at witness' house; his wife (the subscribing witness) her only adviser; both incapable of understanding legal instruments; her relatives opposed the marriage.

3. Mrs. Pease, (subscribing witness)—Mrs. Boothe near seventeen, modest and retiring, and inexperienced; guardian transacted her business affairs, and opposed to her marriage; contract one or two days before marriage; not certain if contract was read, or if so, by whom; "before it was signed, it was explained to Mrs. B. as securing her property to herself, free from Judge Boothe's debts and contracts;" "this was the understanding of its effect by all present at its execution;" Mrs. B. was apprised of B.'s embarrassment; she often conversed with witness about her intended marriage, &c.

Deed reformable against creditor, with *fi. fa.* levied.—Stone v. Hale, 17 Ala. 557-62-3; 1 Story's Com. 131-2. And laches not imputable till after discovery of the mistake.—17 Ala., *supra;* see 1 ib. 170; 8 ib. 553; 9 ib. 578.

Petty et als. v. Boothe et als.

4. Such deeds will be reformed without proof of mistake, in fact, but " where the only evidence is that arising from the general circumstances and ignorance of the parties."—Ball v. Storie, 1 Eng. Ch. 219, (there the deed was drawn by attorney, as in 17 Ala., *supra*,) and see note; Lavender v. Lee, 14 Ala. 692-3-4, and 17 Ala., *supra*.

II. But the marriage contract gives Mrs. Boothe the exclusive interest.

1. If a separate estate is expressly, or by just implication, intended, equity will give that intent effect.—C'ancy on H. & W., book 3, ch. 1, p. 251; Story's Com. Eq. 128-9-131-2-3-4-5-6-7-149-157, and 2 ib., § 1381; Cruis. Dig., tit. Deed, 293-96; 2 Ala. 255, and Br. Bank Mobile v. Dunn & Wife, 2 ib. 155.

2. In settlements made in contemplation of marriage, the presumption is in favor of separate interest.—Lamb v. Wragg, 8 Por. 82; 4 Dess. 447; Chauncey's Rights of, &c., 262; 7 Vin. Ab. 95.

3. The proviso, if repugnant, is void; its " *sotto voce*" whispers of fraud.—1 Steph. Com. 464, § 7. If falsely read, deed is void, (1 Steph. Com. 456,) and repugnant condition is void.— 2 Bac. Ab. 301. So of statutes even.—1 Kent's Com. 462.

4. Boothe's custody is a mere naked custody, " for the benefit of the parties" *sub modo* the deed.—Williams v. Claiborne, 7 Smedes & M. 488.

III. Boothe had possession at and three years after judgment. Remedy exists at law, or if lost by laches, equity will not relieve.—French v. Garner, 7 Por. 49; Mock v. Cundiff, 6 ib. 24.

DARGAN, C. J.—John P. Boothe and Martha R. W. Hodges, just before their intermarriage, entered into a contract respecting her property, which is in the following language: " Whereas a marriage is about to be solemnized between John P. Boothe and Martha R. W. Hodges, and the said Martha is likely to bring into the marriage property of some value, and it being desirable that provision should be made for her maintainance and support, the said Boothe having children by a former marriage, it is therefore agreed and stipulated, that the real estate and negroes that were devised to the said Martha by her father, Richard Hodges, of the State of Georgia, also all other property which she may otherwise hereafter inherit, shall be held

and remain the separate and distinct property of said Martha, not subject to any other disposition, save by the joint consent of herself and one of the trustees hereinafter named and appointed; the said property, however, to be and remain in the possession of the said John P. Boothe, for the benefit of the parties. It is further stipulated, that said property shall descend and be inherited by the children of the said Martha, if she has any; but if none, or in case of their death before marriage, or arriving at the age of twenty-one years, then said property to go to said Boothe. It is further agreed, that George C. Hodges, one of the trustees hereinafter named, shall have full power to sell and dispose of the real estate of said Martha, whenever he may see proper to do so, and appropriate the funds in such way as he may think best for her interest. It is also stipulated and agreed, that George C. Hodges and James W. Exum be, and they are hereby appointed trustees for the said Martha, to protect her interest and to attend to the due execution of *this instrument.*"

The marriage was consummated, and some of the slaves were hired, and the notes for the hire were taken in the name of George C. Hodges as trustee. Previous to the hiring, however, the slaves had been in the possession and under the control of Boothe. The complainants having obtained a judgment at law against Boothe, *who is insolvent*, have filed this bill to subject the money due for the hire of said slaves to the satisfaction of their debts. Upon these facts, the question arises, whether the contract gives to Mrs. Boothe such a separate estate in the slaves as entitles her exclusively to their labor and profits. The reciting part of the deed clearly shows that the inducement to its execution was to provide a support and maintenance for Mrs. Boothe; and the first clause of the granting part (if it may be so termed) fully executes the intention of the parties. The language is, "it is therefore agreed and stipulated, that the real estate and negroes that were devised to the said Martha, by her father, Richard Hodges, of the State of Georgia, also all other property which she may hereafter otherwise inherit, shall be held and remain the separate and distinct property of the said Martha, not subject to any other disposition, save by the joint consent of herself and one of the trustees hereinafter named and appointed." This clause clearly secures the property to her, and gives her a separate estate that could not be defeated by her

husband, nor subjected to the payment of his debts. It is the next succeeding clause that throws doubt upon the subject, which is as follows :. " The said property, however, to be and remain in the possession of the said John P. Boothe,. for. the benefit of the parties." From this clause, it is argued that. I oothe,. the intended husband, was not only entitled to the possession, but also to the profits, for the joint benefit of himself and wife.. If this is the proper construction, then it is clear that the husband would take the entire profits ; for it is the settled law in this State, that personal estate cannot be limited to the joint use of husband and wife ; and when it is attempted so to convey personal estate, the husband will take the whole, to the exclusion of the wife.—Allen & Wife v. White,. adm'r,. 16 Ala. 181 ; Moss v. McCall, 12 Ala. 630; Bender v. Reynolds, ib. 446; Pollard v. Merrill & Eximer,. 15 Ala. 169.. But I cannot give to this clause such a construction ; it would not only defeat the object of the deed, as gathered from the reciting part, but it would destroy the estate of the wife in the slaves, which is secured to her by the preceding clause ; for if the husband is entitled to the profits of the slaves under this clause, then there is no contingency in the deed that will divest his interest, save the death of the wife, leaving children surviving her, who should attain the age of twenty-one years, and thus the wife would be excluded from all interest in them. It is one of the rules in the construction of deeds, that if there be two clauses which are utterly inconsistent with each other,. and which cannot be reconciled, or made to stand together, the last shall give way to the first,. the maxim being, " *the first clause in a deed, and the last in a will shall prevail.*"—2 Greenl. Cr., tit. Deed,. ch. 2, p. 300. Even by this rule, (which should never be resorted to until all efforts to reconcile the conflicting parts have failed,) we should have to protect the estate secured to Mrs. Boothe by the first clause, at the expense of the latter. But if upon a view of the whole instrument, effect can be given to the subsequent clause or meaning to the subsequent words, consistent with the preceding clause, it is then the duty of the court so to construe them. Let us see if meaning and effect cannot be given to the subsequent clause in this case, consistent with the separate estate secured to Mrs. Boothe by the first clause. The manifest intention, in the first place, was to make a provision for Mrs. Boothe, and by a subsequent part of the

Petty et als. v. Boothe et als.

deed, it is provided, that the property should descend and be inherited by her children. This limits her interest to an estate for life, and creates a remainder in favor of her children. It is then further provided, that if she should have none, or if they should die before arriving at the age of twenty-one, then the property should go to the husband. The children, therefore, of Mrs. Boothe, as well as Boothe himself, have a contingent interest in the slaves, and it may be supposed that Boothe, on their account, as well as on account of his wife and himself, would feel an interest in the preservation and increase of the slaves. For this reason the stipulation may have been inserted, that he should have the possession of the slaves, *for the benefit of the parties;* meaning by the term parties, those who took an interest in the slaves, *according to the provisions of the deed* ; that is, that Boothe should have the possession of the slaves, for the separate use of his wife during her life, and after her death, for himself or her children, as the contingency might happen. This construction would give him the possession of the slaves, not for his own use, but for the use of all that took an interest in the deed, according to its provisions ; that is, for the separate use of his wife during her life, and then for her children, if she had any, and if not, for himself. This construction would give meaning and effect to the words used in the latter clause, and would not be repugnant to the preceding one ; and this, I think, is the proper construction to be given to the second clause. It may, however, be said, that it is doubtful whether such was the intention of the parties. But to this it may be answered, that when the subsequent *words* are of doubtful import, they should not be so construed as to contradict the preceding words, which are certain ; but if any effect can be given to them, consistent with the preceding part of the deed, they should be so construed. In any point of view that we are able to take of this case, we think the deed gives Mrs. Boothe a separate estate in the slaves, and also in their hire or profits, during her life ; for if I have failed to show that the second clause can be construed consistently with the first, then it is evident that the second is inconsistent with the first, as well as repugnant to the object of the deed, as evinced by its recitals ; and this inconsistency, instead of destroying the precedent estate, would render void the subsequent clause.

Let the decree be affirmed.