# Galliher r. State Mutual Life Ins. Co.

## Action on Insurance Policy.

(Decided April 4th, 1907.　43 So. Rep. 833.)

1. *Limitation of Actions; Law Governing.*—Notwithstanding that the contract is of another state, and the stipulations therein as to the time of bringing suit would be binding in that state, the same is unenforceable in this state, because contravening the express terms of section 2802, Code 1896.

2. *Insurance; Forfeiture; Waiver.*—Where the insured gave and the insurer accepted two notes, payable at different times, for the premium when it became due, and the note having the longest time to run was payable within the year covered by the premium for which given, each of which notes providing that if the note was not paid when due, although the insurance might be terminated thereby, should not impair the validity of the notes; but that there should be due and payable upon each a sum proportioned to the face value of the note with interest that the time the insurance had been extended should bear to the whole time covered by the premium, and when the notes became due the insurer endeavored to enforce payment of them, in full, and addressed a letter to insured treating the policy as still in force, by and through an agent whose authority in the premises was not questioned, such conduct was a waiver of the forfeiture, and such facts sufficiently show that the insured consented to the waiver; and the insurer was liable on the policy, notwithstanding the failure of insured to pay the notes.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Action by Laura Galliher against the State Mutual Life Insurance Co. on a policy upon the life of James Galliher. From a judgment for defendants, plaintiff appeals. Reversed and rendered.

This was an action on an insurance policy on the life of James W. Galliher, who is alleged to have died on the 13th day of August, 1904, of which the defendant had

[Galliher v. State Mutual Life Ins. Co.]

notice, and is for the first and second installment or annuity under the policy; the plaintiff alleging, further, that she is the widow of said Galliher, and that her widowhood remains to this day. The defense pleaded was that the policy has been forfeited by a failure to pay the premium for the year 1903-04. It is also set up by way of defense that the contract was a Georgia contract, that the statute of limitations of that state governed, and that the suit was barred under the laws of the state of Georgia. The plaintiff, by way of replication, set up a waiver of the stipulations in the note, a full discussion of which will be found in the opinion of the court. The city court judge, trying the cause without a jury, rendered verdict for the defendant, and plaintiff appeals.

BLACKWELL & AGEE. for appellant.—Where the agreement as to the place of contract according to the law of which the policy is to be construed would have the effect of evading a statute of the state in which the foreign company is doing business, such an agreement has been held to be of no effect.—22 A. & E. Ency. of Law, 1350. The forum is in Alabama and a contract limiting the time for bringing the suit is not enforceable in Alabama as it is contrary to the public policy of the forum.—Section 2802, Code 1896; 22 A. & E. Ency. of Law, 1329;; *Union Central Life Ins. Co. v. Spinks*, 69 L. R. A. 264; *Jones v. Jones*, 18 Ala. 250; *Seay v. Palmer*, 93 Ala. 381. Under the proof in this case the contract is an Alabama contract.—*Eli Society v. Pettus*, 140, U. S. 226; *N. Y. L. I. Co. v. Russell*, 23 C. C. A. 43; *Knight Templars & M. L. I. Co. v. Berry*, 1 C. C. A. 561. The facts in this case show a waiver of the forfeit.—*Washburn v. Union Central L. I. Co.*, 143 Ala. 45; *Alabama State Mutual Asso. v. Long*, 123 Ala. 667; *Travellers Ins. Co. v. Brown*, 138 Ala. 524; *U. S. Life Ins. Co. v. Lesser*, 126 Ala. 586; *U. C. L. I. Co. v. Spinks, supra; Mutual Life Ins. Co. v. French*, 30 Ohio St. 240; *Titus v. Glenn Falls Ins. Co.*, 81 N. Y. 149; *Webster v. Phoenix Ins. Co.*, 36 Wis. 67; 19 A. & E. Ency. of Law, pp. 54-5-8.

[Galliher v. State Mutual Life Ins. Co.]

MATTHEWS & MATTHEWS, DEAN & DEAN, and CABA-
NISS & BOWIE, for appellee.—The contract is to be gov-
erned by the law with a view to which it was made and
the policy expressly stipulates that it was deter-
minable by the laws of Georgia.—9 Cyc. 665. It
is not apparent from section 2802 of the Code of
Alabama that it was intended to have extra terri-
torial operation and at common law the stipula-
tion was valid.—*Provident Fund Society v. Howard*,
110 Ala. 509; *Riddlesbarger v. Ins. Co.*, 7 Wall. 386;
*Suggs v. Travellers Ins. Co.*, 1 L. R. A. 847; May on
Insurance (2nd Ed.) § 478; 9 Cyc. 670-72. The contract
was a Georgia contract.—*Bottomly v. Ins. Co.*, 49 N. W.
438; *Mullen v. Reed*, 29 Atl. 478; *Galloway v. Ins. Co.*,
31 S. E. 969; *Ins. Co. v. Fairbanks Canning Co.*, 52 N.
E. 373. There was no waiver of the forfeiture shown in
this case.—*Washburn v. Union Cent. Life Ins. Co.*, 143
Ala. 489; *Culgers v. Ins. Co.*, 58 Barb. 185; *Howe v. Ins.
Co.*, 80 N. Y. 32; *Ins. Co. v. Coons*, 14 Ky. Rep. 110;
*Bouton v. Ins. Co.*, 25 Conn. 542; *Mobile L. I. Co. v.
Pruett*, 74 Ala. 487; *Globe Mut. I. Co. v. Woolfe*, 95 U.
S. 326; *Travellers I. Co. v. Brown*, 138 Ala. 526; *U. S.
L. I. Co. v. Lesser*, 126 Ala. 586.

ANDERSON, J.—Conceding that the policy, which is
the foundation of this suit, is a Georgia contract, and
that the clause shortening the statute of limitations
would be binding in the state of Georgia, it is expressly
prohibited by section 2802 of the Code of 1896. In the
well-considered case of *Jones v. Jones*, 18 Ala. 248,
wherein the case of *Goodman v. Munks*, 8 Port. 84, was
overruled, the court, through Dargan, C. J., said: "It
is a principle of law, admitted by all courts, that the lex
loci contractus must govern as to the validity, interpre-
tation, and construction of the contract; but the remedy
to enforce it, or to recover damages for its breach, must
be pursued according to the law of the forum where the
suit is brought.—*Peake v. Yeldell*, 17 Ala. 636; *Carnegie
v. Morrison*, 2 Metc. (Mass.) 381; *Leroy v. Crownin-
shield*, 2 Mason (U. S.) 157, Fed. Cas. No. 8,269; Story,

35 R

Con. of Laws, §§ 275, 276. Guided by these plain rules, which can be denied by no one, to my mind it seems plain that, where a law of another state is relied on as a defense to a suit brought in this state, it must be shown that according to the lex loci contractus the contract was invalid, or, if once valid, that it has become extinguished, and therefore is not in legal contemplation a contract. If the foreign law does not affect the contract itself, but only the remedy to enforce it, we cannot regard it; for all remedies on contracts, whether made in or out of this state, must be governed by our own laws, when the suit is brought here, without regard to the remedies afforded by the laws of other countries. Applying this test to the question, there can be but one answer given, if we are to be guided by the settled principles of law; for all the authorities agree that the statute of limitations, even when the bar is perfected, does not annul the contract itself, but only takes away the remedy provided by law for its enforcement. Now, if the contract itself is not discharged, but the remedy alone is taken away ,how can we refuse to allow a remedy, the contract being valid, merely because there is no remedy in the state where the contract is made? To refuse a remedy on such a contract would not be to interpret the contract by the lex loci only ,but it would be to govern ourselves by the laws of other countries in regard to the remedies allowed for the purpose of enforcing contracts. In the case of *Williams v. Jones,* 13 East, 439, the parties entered into a contract in India, and there remained until by the law of that country the remedy was barred. Suit was afterwards brought in England, and the foreign statute of limitations was relied on as a bar; but the court held that it was no defense. It was admitted by the court in that case that, if by the law of India the contract was extinguished, then no remedy could be allowed upon it in England; but as the law only took away the remedy, and did not affect the contract itself, the courts of England must enforce it. In the case of *Leroy v. Crowninshield,* 2 Mason (U. S.) 157, Fed. Cas. No.

8,269, the suit was brought in Massachusetts, and the defense was that the action was barred by the laws of New York, where the contract was made. Judge Story, after an elaborate examination of the question, finally yielded to the weight of authority, and held, contrary to his own inclination, that the statute of limitations of New York was no defense. In the case of *Medbury v. Hopkins*, 3 Conn. 427, the question was whether the statute of limitations of New York was a good defense to a suit brought in Connecticut; it appearing that the contract was made in the state of New York, and that if suit had been brought there the statute of that state would have been a good defense. The court said it was well settled that contracts were to be construed according to the law of the place in reference to which they were made, but that the lex loci was applicable only as to the validity and the interpretation of contracts, not as to the time, mode, or extent of the remedy, and upon that principle held that the statute of New York was no defense. In the case of *Lincoln v. Battelle*, 6 Wend. 475, the Supreme Court of New York held that the statute of limitations of the state where the contract was made was no bar to an action brought in the courts of New York. Savage, C. J., in delivering the opinion, said the distinction between the lex loci and the lex fori is well settled. The laws of the lex loci are to govern all questions affecting the validity, nature, and construction of the contract, but the law of the place where the contract is sought to be enforced must govern as to the remedy. To the same effect, see *Ruggles v. Keeler*, 3 Johns. 263, 3 Am. Dec. 42; *Decouche v. Sayetier*, 3 Johns. Ch. 190-218. In the case of *Bryne v. Crowninshield*, 17 Mass. 55, the Supreme Court of that state held the same doctrine. The court said the principle has often been recognized that the laws of the country where the contract is made must govern in its construction. Those of the country where remedy is sought must prescribe the remedy. See, also, *Pearsall v. Dwight*, 2 Mass. 84, 3 Am. Dec. 35, in which Chief Justice Pearsons held the same doctrine. In the case of *Egberts v. Dibble*, 3 McLean (U. S.) 86, Fed. Cas. No.

4,307, it was held that the statute of limitations of the state where the suit was brought alone could be pleaded, and not the statute of limitations of any other state. See, also, *Harper v. Hampton,* 1 Har. & J. (Md.) 622. Opposed, however, to these authorities, is the case of *Goodman v. Munks,* 8 Port. 94." See, also, on this subject, *Seay v. Palmer,* 93 Ala. 381, 9 South. 601, 30 Am. St. Rep. 57. It is true the rule in the *Jones Case, supra,* was modified by our statute (section 2808 of the Code of 1896) so far as it applies to the statute of limitations of other states; but the defendant does not plead the statute of limitations of Georgia, but one fixed by the contract. Moreover, if the limitation is an inherent part of the contract, and should not merely apply to the remedy for its enforcement, then it would be contrary to our statute (section 2802 of the Code of 1896) and would not be upheld in this state.—9 Cyc. 675; *Donovan v. Pitcher,* 53 Ala. 411, 25 Am. Rep. 634.

This brings us to the determination of the question of a forfeiture by the insured before his death, which seems to have been the decisive point in the case as indicated by the opinion of the learned trial judge. It appears that the premium covering the period from July 25, 1903, to July 25, 1904, became due and payable in advance—that is, July 25, 1903—and that Galliher, not being able to pay the same, gave the company his two notes, executed July 25, 1903, each for $59.76, and one note payable anuary 1, 1904, and the other one May 1, 1904; each note containing the following clause: "I understand and agree that in consideration hereof said policy is extended until default is made in the payment of this note, when all rights and benefits secured thereby shall cease and determine without notice, and said policy shall be ipso facto null and void. •I hereby agree that this note shall not be deemed a payment of life insurance. but only an extension of time for the payment of the same, and the nonpayment of this note when due .and the termination of said insurance by reason thereof, shall not impair the validity of this note, but the same shall become due and payable for the proportion of its face and interest that the time the in-

surance has been extended for bears to the whole time covered by said premium." It will be observed that, upon default in the payment of the note, the policy became "ipso facto null and void"; but there can be little or no doubt but that the forfeiture could be waived by the company. Did the company by its subsequent conduct treat the forfeiture as waived and treat the insurance as still existing? "It has been frequently said that forfeitures for the nonpayment of premiums are not favored in law, and the courts are always prompt to seize hold of any circumstances that indicate an election to waive the forfeiture, or an agreement to do so, on which the party has relied and acted."—*Washburn v. Union Cen. Co.*, 143 Ala. 485, 38 South. 1011; *U. S. Ins. Co. v. Lesser*, 126 Ala. 568, 28 South. 646; *Insurance Co. v. Egglestan*, 96 U. S. 572, 24 L. Ed. 841; *Insurance Co. v. Doster*, 106 U. S. 30, 1 Sup. Ct. 18, 27 L. Ed. 65; *Insurance Co. v. Brown*, 138 Ala. 526, 35 South. 463. The mere retention of the notes would not amount to a waiver of the forfeiture; but it would seem that an insistence upon the payment of both notes in full would operate as a waiver of the forfeiture, because by attempting to collect the notes in full the company sought to get the premium covering the period from July 25, 1903, to July 25, 1904, as the amount due under the terms of the note was less than the face thereof, in a case of forfeiture. The Kentucky court, in a well-considered opinion and in a case wherein the facts were in a measure similar to the one involved in the case at bar, which is reported in *Union Central Life Ins. Co. v. Spinks*, 83 S. W. 615, 84 S. W. 1160, 119 Ky. 261, 69 L. R. A. 264, said: "It is well-settled law in this state that, if an insurer desires to avail itself of conditions in its policy to declare it forfeited for the nonpayment of a premium note, it must unequivocally elect to so treat it, and in fact then and thereafter so treat it. It will not be allowed, though, to claim, both that it is not bound on the policy, but that the insured is bound to pay the note. Its action must be consistent. While it may retain the note as evidence of its nonpayment, it must not retain it, or treat

it as an evidence of that much indebtedness.—*More-land v. Union Central L. Ins. Co.*, 104 Ky. 129, 46 S. W. 516; *Union Central L. Ins. Co. v. Duvall*, 46 S. W. 518, 20 Ky. Law Rep. 441; *Johnson v. Southern Mut. L. Ins. Co.*, 79 Ky. 406; *Walls v. Home Ins. Co.*, 71 S. W. 650, 24 Ky. Law Rep. 1452. In the case at bar appellant not only retained the note after its maturity, but repeatedly endeavored to collect it in full thereafter. It thereby claimed that the insured owed to it $396.80 as an enforceable debt. If he did, then appellant was bound to him, as the consideration for it, upon the policy of insurance. Even though such provisions in policies of insurance are automatic, they may be waived by the parties, and this waiver may be indicated by conduct, as well as by express language. The fact that the insured marked on its private books that the policy was canceled, did not cancel it, if thereafter it continued to assert the note as an enforceable obligation against the insured, thereby evincing to him that it was not canceled. Upon prinicple and authority we hold that the evidence here shows a waiver by the insurer of the conditions of forfeiture in the policy."

If the policy was forfeited on January 1, 1904, then the insured (Galliher) did not owe the company the full amount of the first note, but only about $52. If the policy became forfeited, and was so treated upon the nonpayment of the second note, then he still owed less than the amount of both notes, yet we find the company retaining both notes and attempting to collect them in full. If the forfeiture of January 1st was not waived, why did the company not demand what was really due on the first note, about $52, and offer to surrender both notes, instead of attempting to collect the full amount of the first one and retaining the other one? Or, if the company did not waive the forfeiture of May 1st, when the second note matured, why did it subsequently attempt to collect both notes in full, when, under the terms of the second forfeiture, there was only due the proportionate part of the premium up to May 1st, and not the full amount of both notes? Again, we find a letter addressed to Galliher, dated August 25,

1904, treating the policy as still in existence if it had "thirty days of grace clause." It is true Porter testified that this letter was not written by any one who had the authority to waive the forfeiture for the company, and it might be, with the letter standing alone, it could not have that effect; but the letter was sent out by an employe of the company whose authority to make out and mail notices was not questioned, and the fact that this notice was mailed is an inference that the company's records did not show a forfeiture of the policy (no entry to that effect being upon lists or books), notwithstanding the company claimed, in a letter of August 19th, that the policy was forfeited the preceding January. If this forfeiture was not waived, and the company took advantage of the January default, it stands to reason that there would have been some entry or memorandum on the books or list from which Griffin, who sent out the July notice, would have been deterred from doing so.

Conceding that the consent of Galliher to a waiver of the forfeiture was necessary, and that after the forfeiture was made the company could not collect the full amount of premium instead of the proportionate amount due until the forfeiture, which may or may not have been necessary, we think his assent can be readily inferred from the facts. He knew that the policy would become "ipso facto null and void" upon a default of the January note, and, further, that he would only owe them so much of the premium as was due from July 25th to January 1st, about $52, and less than the face of the note. Consequently, when the company demanded of him payment in full of the note after the forfeiture period, and retained the second note, its act led to the natural conclusion that they were treating the policy as still in force and were seeking to collect the premium, rather than the proportionate amount due in case of forfeiture. He made a partial payment of the note, a promise to pay it (not the proportion) as soon as he was able. The policy being in existence up to July 25, 1904, and containing a 30 days of grace clause, and Galliher having died within said 30 days, the de-

fendant became liable to the plaintiff, the beneficiary, for the amount due under the terms of the policy, less any unpaid premiums, with interest thereon since maturity.

The judge of the city court erred in rendering judgment for the defendant, and its judgment is reversed, and under the terms of the act regulating appeals from that court we will here render such judgment as should have been rendered.

Reversed and rendered.

TYSON, C. J., and DOWDELL and McCLELLAN, JJ., concur.