17 So.2d 766

## INTER-OCEAN CASUALTY CO. v. ANDERSON.

6 Div. 145.

Supreme Court of Alabama.

Jan. 13, 1944.

Rehearing Denied May 18, 1944.

Rosenthal & Rosenthal and Wm. A. Jacobs, all of Birmingham, for appellant.

Lange, Simpson, Brantley & Robinson, of Birmingham, for appellee.

538

BROWN, Justice.

Assumpsit by appellee against appellant on a policy of insurance, insuring F. M. Anderson "from twelve o'clock noon, standard time, at the place of residence of the insured on the 3rd day of November, 1938, until twelve o'clock noon, such standard time, on the first day of Febry. 1939, and for such further period as the payment of renewal premiums will maintain this policy in force, * * * against;—(1) Loss resulting solely from bodily injuries affected directly and independently of all other causes through accidental means" in the principal sum of one thousand dollars, naming plaintiff as the beneficiary.

The case went to the jury under Count A of the complaint—all other counts being withdrawn, the plea of the general issue, special pleas 10 and 11, plaintiff's general replication, and special replications 1 and 3 to pleas 10 and 11, resulting in verdict and judgment for plaintiff.

The assignments of error challenging the rulings of the court on the demurrer to said count A are without merit. The count substantially follows form 12, Code 1940, Tit. 7, § 223, p. 197, averring that the sum claimed "is due" on said policy, reciting the conditions on which the liability attached and its maturity. Under repeated rulings here this was all sufficient. Modern Order of Prætorians v. Wilkins, 220 Ala. 382, 125 So. 396; American Nat. Ins. Co. v. Moss, 215 Ala. 542, 112 So. 110; American Bankers' Ins. Co. v. Dean, 227 Ala. 387, 150 So. 333.

The appellant had full benefit of the defenses proposed by its special pleas 5, 9 and 12, to which demurrers were sustained, in pleas 10 and 11, to which demurrers were overruled, and should error be conceded here, it would not be ground for reversal.

Replications 1 and 3 set up a course of dealing between the parties suggesting as an inference of fact a waiver of strict compliance with the provisions of the policy in respect to the payment of premiums on the due date thereof, coupled with an averment that by such course of dealing between the parties, strict compliance was waived. Birmingham Ry., L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, Ann.Cas. 1916A, 543; Morgan Hill Paving Co. v. Fonville, 222 Ala. 120, 127, 130 So. 807.

The court did not err in overruling the demurrer to said replications. Christian Benevolent Burial Ass'n, Inc., v. Huff, 241 Ala. 119, 1 So.2d 390; Galliher v. State Mut. Life Ins. Co., 150 Ala. 543, 43 So. 833, 124 Am.St.Rep. 83; Washburn, Adm'r, v. Union Central Life Ins. Co., 143 Ala. 485, 38 So. 1011.

The evidence was without dispute that the assured lost his life solely from bodily injuries effected directly and independently of all other causes by accidental means on the 23rd day of March, 1942. The defendant's contention and sole defense is that the premiums on said policy were payable quarterly; that a premium was due on the first day of February, 1942, which was not paid,—all other premiums having been paid up to that date,—and that the policy had lapsed. The plaintiff offered evidence tending to show that through a course of dealing over some considerable period of time, the insured had been lax in the payment of his premiums on the exact due date thereof, and that the defendant had been accepting such premiums after maturity without objection.

The evidence is without dispute that the insured delivered to the defendant's general agent Reid, and manager of its business in Alabama, a check covering the premium due February 1st, 1942, on the 4th day of February, and that Reid held said check in his possession and presented the same for payment on one or more occasions, the last presentation, as the evidence goes to show, being on the day insured lost his life, and there was evidence going to show that up to that time no forfeiture had been claimed. There was evidence further going to show that it was a practice of insured to pay by check and of the insurer to accept such check in payment. At the time Reid accepted a check from insured he delivered to him a receipt for the premium on a receipt form used by the defendant in its business, containing the following: "If draft, check or remittance other than cash is tendered in payment of the premium, the company will accept same for collection purposes only and this receipt shall not be binding unless and until this company actually receives the cash for such draft, check or remittance."

The circumstances under which the check was given and received are stated by the witness Reid, as follows: "* * * I quite distinctly remember having some dealings with Mr. J. M. Anderson on February 1, 1942. He had a claim with

the Company at that time. I know what his claim was for. He had acute Iritis. The amount of the claim was $139.86. He owed a premium on February 1st. I took this check for $139.86 to Mr. Anderson. I took the receipt card out with me. We had a conversation regarding the payment of the premium that was due at that time and I asked if he would like the amount deducted from the claim or if he had rather we would exchange checks and he said, 'I will give you my check and you give me yours.' I gave him this check for $139.86. He gave me his check for $9.75. When he gave me his check I gave him a receipt. The receipt was in the form you show me. I signed it. It was in exactly this form."

 In view of the evidence going to show that the check was held, and several attempts were made to cash the same up to and including the date of death, without forfeiture being declared and entered, the question of whether or not the insured's rights under the policy had been forfeited prior to his death for nonpayment of the premium due February 1st, 1942, was for the jury.

■ The court did not err in refusing charges H and I. Said charges were argumentative in tendency and abstract in application.

■ Charge G is abstract. There was no issue of reinstatement.

■ Charge D was refused without error in that it left to the jury the function and duty of interpreting the pleadings and determining what were the material averments of plaintiff's replication. Charge K is subject to the same criticism.

■■ Charge F was fully covered by the oral charge of the court. Moreover, this charge was well refused because it imposed on the plaintiff a greater burden than the pleading upon which issues were joined, in that it required proof that the course of dealings amounted to a "custom."

■ Charges A and M, if not otherwise bad, are argumentative and abstract. Reid's authority as defendant's agent, in dealing with the insured in respect to the payment of premiums on said insurance policy sued on, was a question for the jury. Charge E was therefore refused without error. Moreover, this issue was fully covered by the oral charge of the court.

■ Charge 3 was well refused for the reason that if given it would have projected into the case an issue not presented by the pleadings and not litigated between the parties.

Charges 1 and 2, the affirmative charge in different form, were properly refused.

We have examined the rulings on evidence and find nothing that warrants treatment. There is no error in the record.

Affirmed.

GARDNER, C.J., and THOMAS and LIVINGSTON, JJ., concur.