The appellant, Daniel Dumas, was convicted for the offense of manslaughter and was sentenced to ten years' imprisonment. For the reasons outlined below, the appellant's conviction and sentence are hereby reversed and the case remanded.
The appellant was indicted by the Wilcox County Grand Jury for "intentionally causing the death of another person, Jessie James White, by shooting him with a shotgun." He was tried by a duly sworn jury and found guilty as charged. Following the trial, three jurors informed the trial judge that their "verdict was not [their] individual verdict but . . . was something agreed on by a majority." Shortly thereafter, the court held a hearing regarding the allegations that their verdict was influenced by another juror who presented extraneous information concerning the appellant which had not been offered into evidence. At the hearing, the three jurors testified that while in jury deliberations, one of the jurors discussed the fact that he had known the appellant since he was a young boy and that he had always been a "bad" boy and that he had always been in trouble. They further testified that the same juror informed the other jurors that he believed the present killing was a "revenge killing" to get back at the victim's family because the victim's brother had previously shot and killed one of the appellant's brothers. All three jurors testified that this extraneous information influenced their verdict.
Thereafter, a sentencing hearing was held and the appellant was sentenced to ten years' imprisonment. His motion for a new trial was denied for his failure to file the motion within the sixty-day period allowed under Rule 13 (d) of the Temporary Alabama Rules of Criminal Procedure.
Appellant contends that the trial court committed prejudicial and reversible error in denying his motion for a new trial. He alleges that prejudice resulted from the failure of one of the jurors to answer both the court's and counsel's questions on voir dire. Additionally, he claims this juror subsequently presented extraneous material which had not been offered into evidence to the jury during deliberations.
During voir dire of the prospective jurors, the court asked the following questions:
 "Q: Do you have any interest in the conviction or the acquittal of the defendant? (No response)
 "Q: Have you made any promises or given any assurances that will convict or acquit the defendant? (No response)
 "Q: Do you have a fixed opinion as to the guilt or innocence of the defendant which would bias your verdict? (No response)
". . . .
 "Q: Do you know of any other lawful excuse or reason which you should not serve as a juror in the case? (No response)."
The prosecutor asked the prospective jurors the following:
 "Q: Is there anybody here that knows Daniel, seated at the table with Mr. Gilmore? He lives in the Kimbrough area. Does anybody here know him? *Page 1085 
(PJ Ford responded: I've lived in the adjoining community.)
". . . .
 "Q: Does anybody else know Mr. Dumas, Daniel Dumas? (No Response)"
The defense counsel then asked the prospective jurors the following questions:
 "Q: Do you know of any reason that you could not give the defendant a fair and impartial trial? (No response.)"
The appellant alleges that the testimony of three of the jurors at the hearing indicates that their verdict was influenced by the extraneous information regarding the appellant's childhood and family history. Appellant contends that the resulting prejudice is attributable to the failure of that juror to respond appropriately to voir dire questions. We agree. The rule is well settled that:
 "The failure of a juror to make a proper response to a question regarding his qualifications to serve as a juror, regardless of the situation or circumstances, does not automatically entitle one to a new trial. The proper inquiry in such cases is whether the defendant's rights were prejudiced by such failure to respond properly." Watson v. State, 398 So.2d 320, 330 (Ala.Cr.App. 1980), citing Beauregard v. State, 372 So.2d 37, 41 (Ala.Cr.App.), cert. denied, 372 So.2d 44 (Ala. 1979).
Further, the rule regarding motions for new trials based on jury challenges has been stated in Williams v. State,342 So.2d 1328, 1329 (Ala. 1977).
 "A motion challenging the composition of a grand jury, petit jury, or qualifications of individual jurors, filed after the commencement of trial, must allege, and proof must show that grounds for the motion were not known to the defendant before he went to trial, or that he could not have known them by exercising due diligence." Williams, supra; also see Smiley v. State, 371 So.2d 469 (Ala.Cr.App. 1979).
In the present case, the appellant could not have eradicated the resulting prejudice prior to trial by the "exercise of due diligence." Williams, supra. The extraneous information offered by the juror regarding the appellant's background would have gone unnoticed but for the three jurors coming forth after the jury's verdict had been reached. It is apparent that the "extraneous" material concerning the appellant's childhood and family life did influence the votes of at least three of the jurors.
The general rule regarding jury deliberation is that the verdict of a jury cannot be impeached by an affidavit or testimony of a juror as to what was said among the jurors during deliberations. Taylor v. State, 18 Ala. App. 466,93 So. 78 (1922); Martin v. State, 22 Ala. App. 154, 113 So. 602
(1926); Lackey v. Lackey, 262 Ala. 45, 55-56, 76 So.2d 761
(1954); Law v. State, 407 So.2d 572, 574 (Ala.Cr.App. 1981). A recognized exception to that rule has been recognized when "extrinsic evidence" or evidence as to extraneous facts has been improperly communicated to the jury. Taylor, supra;Martin, supra. This requirement is provided for in § 12-16-7,Code of Alabama (1975), which states:
 "If a juror has personal knowledge respecting any fact in controversy, he must declare it in open court during the trial; and if during the retirement of the jury a juror declares a fact as of his own knowledge which could be evidence in the case, the jury must forthwith return into court and such juror must, in either case, be sworn and examined as a witness in the presence of the parties."
The Alabama Supreme Court in Lackey, supra, addressed this very Code Section, then the Code of 1940, Title 30, Section 7, by holding:
 "But this does not mean that after a jury has concluded its deliberations and returned its verdict that the verdict may be impeached by a showing of statements made by a juror during the deliberations." 262 Ala. at 56, 76 So.2d at 769.
See also Law v. State, supra, at 575.
In affirming both Lackey and Law, the courts found that the evidence was neither *Page 1086 
"extrinsic," nor "extraneous"; therefore, Title 30, Section 7,Code of 1940, and its successor, § 12-16-7, Code of Alabama
(1975), were not applicable.
This very issue has recently been ruled on by the Alabama Supreme Court, wherein Chief Justice Torbert stated as follows:
 "It is a well settled principle of law, and, further, it is fundamental to a fair trial, that jurors should consider only the evidence presented at trial. In determining whether a new trial is warranted in a criminal case because of outside influence, we look to the standard set forth in Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460 (1932):
 "`The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered [emphasis added.]'"
Ex parte Troha, 462 So.2d 953, 954 (Ala. 1984).
The court in Troha relied on Roan, cited in Troha, and on Smithv. State, 39 Ala. App. 501, 105 So.2d 662 (1958), both of which recognized the pivotal issue to be whether the outside influence "might have unlawfully influenced the jury's verdict."
In the case sub judice, we believe that the test as stated inEx parte Troha is binding. The Roan test mandates reversal whenever the misconduct might have unlawfully influenced the jury's verdict. The testimony of the three jurors is more than sufficient to support such a finding. Troha, at 954. As Chief Justice Torbert stated, it would be "difficult to deny" that the extraneous facts put before the jury "might have unlawfully influenced the verdict." Id. at 954. (Emphasis in original.)
Based on the authority cited above, the appellant's conviction and sentence are hereby reversed and the case is remanded.
REVERSED AND REMANDED.
All the Judges concur.